**CHEMICAL WASTE MANAGEMENT, INC., et al., Petitioners,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 93–1860.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 10, 1995.

Decided June 16, 1995.

Michael W. Steinberg, Washington, DC argued the cause for petitioners Chemical Waste Management, Inc., et al. With him on briefs was Michael A. McCord, Washington, DC.

Sylvia Quast, Atty., U.S. Dept. of Justice, Washington, DC, argued the cause for respondent. With her on the brief were Lois J. Schiffer, Acting Asst. Atty. Gen., and Daniel S. Goodman, U.S. Dept. of Justice, Earl Salo, Asst. Gen. Counsel, U.S.E.P.A., Washington, DC.

Before BUCKLEY, WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Petitioners, Chemical Waste Management, Inc. and E.I. DuPont de Nemours & Co., Inc., challenge an Environmental Protection Agency ("EPA") off-site rule, 40 C.F.R. § 300.440 (1994), delineating procedures the EPA uses to classify commercial hazardous waste management facilities as "unacceptable" to contract with the EPA, the state, or a private party to manage wastes removed from Superfund sites. Specifically, petitioners make a facial challenge to the off-site rule, arguing the supplied procedures are inadequate to satisfy the demands of due process. While petitioners raise serious questions as to the constitutionality of this rule, we hold that they have not satisfied their burden in bringing a facial challenge. Accordingly, we make no determination on the merits, but dismiss this petition.

## I. BACKGROUND

Superfund cleanups concern the removal of wastes from contaminated sites for proper management at off-site facilities, possessing federal and state permits to handle such waste. These permits are issued under sections 3004 and 3005 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6924–6925 (1988). The EPA is authorized under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") to perform cleanups or to require that private parties deemed liable for the contamination perform the work under EPA oversight. 42 U.S.C. §§ 9601–9675 (1988 and Supp. IV 1992). These private parties often contract with waste-processing facilities to handle such waste. Specifically, CERCLA authorizes the EPA to respond to actual and threatened releases of hazardous substances and "any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare." 42 U.S.C. § 9604(a)(1). Response actions authorized by CERCLA include both remedial actions and removal actions. 42 U.S.C. § 9601(25).

In 1985, the EPA issued its off-site policy, 50 Fed.Reg. 45,933 (1985), under which off-site facilities were required to have permits or interim status under the RCRA in order to receive wastes from Superfund cleanups. Portions of this policy were codified in the Superfund Amendments and Reauthorization Act of 1986 ("SARA"). Pub.L. No. 99–499, 100 Stat. 1613 (1986). SARA added section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), which established the conditions under which hazardous substances may be transferred from CERCLA sites to off-site facilities for treatment, storage, and disposal. Among other things, the section requires the removal of hazardous waste only to those facilities in compliance with sections 3004 and 3005 of the RCRA, as well as other applicable federal and state laws and regulations. 42 U.S.C. § 9621(d)(3). In most states, the state, rather than the EPA, administers the RCRA hazardous waste program. The state operates its own RCRA program, consisting of state statutes and regulations in lieu of the federal scheme. 42 U.S.C. § 6926(b) (1988).

The EPA's role is generally limited to one of oversight.

In 1987, the EPA issued its revised off-site policy, entitled "Revised Procedures for Implementing Off–Site Response Actions" (Nov. 13, 1987). The revised policy incorporated many of the provisions of section 121(d)(3) of CERCLA. The policy also set forth revised procedures governing whether a waste management facility is determined unacceptable to continue to process waste. On November 29, 1988, the EPA published its proposed off-site rule for public comment. 53 Fed.Reg. 48,218 (1988). The proposal generally adopted the procedural scheme under the revised policy. *Id.*

On September 22, 1993, the EPA published the final off-site rule at issue here. 58 Fed. Reg. 49,200 (1993). Under this rule, either the state or the EPA makes a finding that a violation exists at the facility. 40 C.F.R. § 300.440(a)(4), (c). If the EPA decides the violation is relevant, the EPA issues an initial determination of "unacceptability," 40 C.F.R. § 300.440(c), and must notify the facility. 40 C.F.R. § 300.440(d)(1). Notice must include the "specific acts, omissions, or conditions which form the basis" of the initial unacceptability determination. 40 C.F.R. § 300.440(d)(2). The regulatory criteria for acceptability are set forth at 40 C.F.R. § 300.440(b).

The facility can request an informal conference with the EPA Regional Office within 10 days of the date of the notice to discuss the basis for the underlying violation, or may submit written comments within 30 days of that date, or both. 40 C.F.R. § 300.440(d)(4). If the facility requests a conference, such conference will take place no later than 30 days after the date of the notice. *Id.* No state representative is required to attend the conference, but may voluntarily do so. *Id.* The facility bears the burden of proving its acceptability. Unless the EPA determines the information provided is adequate to support a finding of acceptability, the facility becomes "unacceptable" on the 60th day after the initial notice. 40 C.F.R. § 300.440(d)(6). The EPA Regional Administrator may extend this 60 day period

if more time is required to review a submission. 40 C.F.R. § 300.440(d)(8).

The facility may request, within 10 days, reconsideration by the EPA Regional Administrator. 40 C.F.R. § 300.440(d)(7). The Administrator has discretion to decide whether the reconsideration should be based on a review of the existing record, an additional conference, or other appropriate means. *Id.* Finally, a facility found unacceptable may seek to regain acceptability after the relevant violations have been corrected. 40 C.F.R. § 300.440(f).

Petitioners timely sought review of this rule.

## II. DISCUSSION

Petitioners make a facial challenge to the off-site rule, asserting the rule does not comply with the mandates of due process. Petitioners allege myriad procedural deficiencies. We need not enumerate every perceived inadequacy, but rather present an overview of petitioners' contentions. First, while the rule directs the EPA to issue a notice of unacceptability based on a finding of noncompliance, the rule does not require that these findings satisfy any threshold level, or be documented in a particular manner. Rather these "findings" may amount to mere allegations of noncompliance contained, for instance, in a complaint or criminal indictment. See 40 C.F.R. §§ 300.440(b)(1)(ii), (f). None of these documents must necessarily contain findings made by an impartial decisionmaker. In addition, the rule provides no ascertainable standard for reviewing such findings. The EPA may simply decide whether a particular violation is relevant, thus bypassing the fundamental question of whether the facility is actually in violation. The EPA might thus make its unacceptability determination based on the initial "finding," without ever making an independent finding of noncompliance.

In addition, the informal conference itself provides a facility with minimal procedural protections. The stated purpose of the informal conference is to discuss the basis for the underlying violation, 40 C.F.R. § 300.440(d)(4), not to resolve disputes over whether the finding is correct. The EPA employee heading the conference is thus not authorized to overrule a finding of noncompliance. Moreover, a facility has no right to take discovery regarding the findings, nor can it subpoena witnesses or documents. It thus might have no opportunity to confront or question those persons who made the initial finding of noncompliance at the conference. A facility also bears the burden of proof at the conference. "Unless EPA determines that information provided by the owner/operator and the State is sufficient to support a determination of acceptability, the facility becomes unacceptable on the 60th calendar day...." 40 C.F.R. § 300.440(d)(6). Basically, the facility must refute an allegation of noncompliance by proving the absence of any violation.

Petitioners also contend the off-site rule fails to provide fair and adequate post-deprivation procedures. For instance, they allege the process of reconsideration has no standard of review nor deadline to insure timely corrections of erroneous decisions by EPA staff.

The EPA responds, as a threshold matter, that petitioners have failed to establish that they possess a constitutionally protected property or liberty interest. Regarding the alleged property interest, the EPA maintains it is not revoking a facility's RCRA permit, but is simply determining that the facility is not eligible to receive hazardous waste from a CERCLA-funded cleanup. Nor is the EPA barring unacceptable facilities from continuing to receive non-CERCLA wastes.

According to the EPA, petitioners fare no better contending they have a liberty, or reputational, interest at stake. A person's liberty interest is affected only when the government "acts to injure his or her good name, reputation, honor or integrity, or imposes a stigma that effectively forecloses his or her future employment opportunities." *Doe v. United States Department of Justice,* 753 F.2d 1092, 1105 (D.C.Cir.1985). The EPA contends a decision not to recertify facilities for eligibility to perform government-related work does not impose a stigma for due process purposes. The EPA asserts any resulting stigma arises from the underly-

ing compliance problem, not from the off-site unacceptability determination.

Assuming a constitutionally protected property or liberty interest does exist, the EPA, relying on the three-pronged test established by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), states that the procedures already contemplated by the rule provide more than adequate protection for petitioners. The *Mathews* test requires the balancing of three factors: 1) the private interest affected by the rule; 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

Applying the first factor, the EPA alleges the private interests affected are essentially economic. As a result, they should be afforded less weight than the interests of one in his personal liberty or in receiving essential government benefits.

Regarding the second factor, the EPA asserts if a deprivation involves nonfactual issues, or facts of a judgmental nature, then trial-type procedures are neither necessary nor appropriate. *See Costle v. Pac. Found.,* 445 U.S. 198, 219–220, 100 S.Ct. 1095, 1107–08, 63 L.Ed.2d 329 (1980). Even when such inquiries are fact intensive, informal procedures are often adequate. The EPA quotes petitioners' brief, stating "the pivotal question in evaluating the facility's compliance is often whether a particular shipment of waste falls within the convoluted definition of 'hazardous waste' in the RCRA regulations." (Chemical Waste Br. at 7). If no factual dispute exists concerning the content of a shipment of waste to a facility, but only a legal dispute about whether the waste was hazardous under EPA regulations, trial-type procedures would be ill-suited to resolve the issue.

The third *Mathews* factor focuses on the importance of the government interest, including the burdens imposed by additional procedural requirements. The EPA stresses the government's interest here is compelling.

Congress was concerned that the EPA not transport CERCLA wastes to unsafe facilities. H.R.Conf.Rep. No. 962, 99th Cong., 2d Sess. 248 (1986), U.S.Code Cong. & Admin.News 1986, pp. 2835, 3341. "Congress has directed EPA to clean up Superfund sites expeditiously." 58 Fed.Reg. 49,200, 49,212. The rule attempts to balance the goal of cleaning Superfund sites quickly and avoiding the creation of new Superfund sites, while affording procedural protections to off-site facilities. Requiring further procedures would upset this delicate balance.

While petitioners certainly raise serious—indeed grave—questions as to the adequacy of these procedures in their totality, we nonetheless are unable to reach the merits because petitioners have not made a proper facial challenge. "A facial challenge to a legislative Act is ... the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987); *see also Steffan v. Perry,* 41 F.3d 677, 693 (D.C.Cir.1994) (in banc) (because constitutional judgments are only justified out of the necessity of adjudicating rights in particular cases, a facial challenge must demonstrate no circumstances exist where the Act would be valid).

We discern at least one scenario where the off-site rule would be procedurally valid. The rule suffers no procedural infirmities where a facility does not dispute the initial finding of unacceptability. Under such circumstances, the procedural safeguards petitioners allege are lacking become unnecessary for the simple reason that the facility is not challenging the finding in any respect. While this hypothetical scenario may not be common, it is sufficient to establish that petitioners' facial challenge must fail. Consequently, if petitioners are to succeed, they must bring a constitutional challenge as applied specifically to them.

We stress our dismissal in no way reflects our approval of the procedural scheme at issue. While the procedures are not properly before us for a full blown due process analysis under the three prong balancing test of *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903, we find petitioners' concerns

# 1438

regarding some of the procedures given, and the absence of others, troubling. For instance, requiring the EPA to review allegations of noncompliance based on an ascertainable standard would impose few, if any, additional burdens, and would likely contribute to the accuracy of the fact-finding. In addition, petitioners may be unable to effectively challenge the underlying allegation of noncompliance itself at the informal conference, especially if no formal finding has ever been made.[1] Our misgivings are exacerbated by the fact that the burden of proof remains on the facility throughout the entire process. Whether such possible procedural flaws alone would be sufficient to strike down the off-site rule in a proper challenge, we do not express an opinion. In addition, we do not imply these potential flaws are necessarily the only ones contained in the overall procedural scheme. We simply wish to emphasize that our holding in no way indicates our automatic approval of the off-site rule.

For the foregoing reasons, petitioners' action is dismissed.

*It is so ordered.*

---

1. An as-applied challenge, however, would allow us to determine the exact scope of such a proceeding.