No. 95–856. JANKLOW, GOVERNOR OF SOUTH DAKOTA, ET AL. v. PLANNED PARENTHOOD, SIOUX FALLS CLINIC, ET AL. C. A. 8th Cir. Motion of National Right to Life Committee, Inc., for leave to file a brief as *amicus curiae* granted. Certiorari denied.

Memorandum of JUSTICE STEVENS, respecting the denial of the petition for certiorari.

The Court's opinion in *United States* v. *Salerno*, 481 U. S. 739 (1987), correctly summarized a long established principle of our jurisprudence: "The fact that [a legislative] Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.*, at 745.

Unfortunately, the preceding sentence in the *Salerno* opinion went well beyond that principle. That sentence opens Part II of the opinion with a rhetorical flourish, stating that a facial challenge must fail unless there is "no set of circumstances" in which the statute could be validly applied. *Ibid.; post*, at 1178. That statement was unsupported by citation or precedent. It was also unnecessary to the holding in the case, for the Court effectively held that the statute at issue would be constitutional as applied in a large fraction of cases. See 481 U. S., at 749–750.

While a facial challenge may be more difficult to mount than an as-applied challenge, the dicta in *Salerno* "does not accurately characterize the standard for deciding facial challenges," and "neither accurately reflects the Court's practice with respect to facial challenges, nor is it consistent with a wide array of legal principles." Dorf, Facial Challenges to State and Federal Statutes, 46 Stan. L. Rev. 235, 236, 238 (1994). For these reasons, *Salerno*'s rigid and unwise dictum has been properly ignored in subsequent cases even outside the abortion context.[1] Accordingly, there is

---

[1] See, *e. g.*, *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U. S. 833, 895 (1992) (statute facially invalid as "substantial obstacle" to exercise of right in "large fraction" of cases); *id.*, at 972–973 (REHNQUIST, C. J., concurring in judgment in part and dissenting in part) (arguing that "no circumstance" dictum should have led to different result); *Kraft Gen. Foods, Inc.* v. *Iowa Dept. of Revenue and Finance*, 505 U. S. 71, 82 (1992) (REHNQUIST, C. J., dissenting) (arguing that tax statute was facially valid because it would be constitutional under certain facts); *INS* v. *National Center for Immigrants' Rights, Inc.*, 502 U. S. 183, 188 (1991) (applying appropriate rule: "That the regulation may be invalid as applied in [some] cases, . . . does not mean that the regulation is facially invalid"); *Bowen* v. *Kendrick*, 487 U. S. 589, 602 (1988) (statute facially invalid under Establishment Clause only if, *inter alia*, law's "primary effect" is advancement of religion, or if it requires "excessive entanglement" between church and state); *id.*, at 627, n. 1 (Blackmun, J., dissenting) (pointing out and agreeing with majority's failure to apply "no circumstance" dictum); *Shaffer* v. *Heitner*, 433 U. S. 186 (1977)

no need for this Court affirmatively to disavow that unfortunate language, in the abortion context or otherwise, until it is clear that a federal court has ignored the appropriate principle and applied the draconian "no circumstance" dictum to deny relief in a case in which a facial challenge would otherwise be successful.[2] I thus concur in the denial of this petition.

JUSTICE SCALIA, with whom THE CHIEF JUSTICE and JUSTICE THOMAS join, dissenting.

In this case, the United States Court of Appeals for the Eighth Circuit declared unconstitutional a South Dakota law which requires a physician to notify a pregnant minor's parent of an impending abortion 48 hours before the abortion is to be performed.[1]

(examining facial validity of state statute permitting exercise of personal jurisdiction over defendant without reference to whether statute was constitutional as applied to petitioner).

These cases, along with other decisions and the holding in *Salerno* itself (that the challenged Act was constitutional in *most* circumstances, not merely *one*), should have braced the dissent against the minor risk of whiplash from the "head-snapping" observation, *post*, at 1180, that our "doctrinal pattern is somewhat more complex" than *Salerno*'s "no circumstance" language suggests, Fallon, Making Sense of Overbreadth, 100 Yale L. J. 853, 859, n. 29 (1991) (citing cases).

[2] In all likelihood, the decision of the Fifth Circuit applying the "no circumstance" test would have been decided the same way even if that court had utilized the "large fraction" test applied by the Eighth Circuit in this case. See *Barnes* v. *Moore*, 970 F. 2d 12, 14 (CA5 1992) (noting that the provisions at issue were "substantially identical" to provisions upheld in *Casey*).

Furthermore, it is not at all clear to me, given intervening statements by Members of this Court, see *Fargo Women's Health Organization* v. *Schafer*, 507 U. S. 1013, 1014 (1993), that subsequent Fifth Circuit panels would follow *Barnes*' application of the "no circumstance" test, providing yet another reason to deny the petition in this case.

[1] South Dakota Codified Laws § 34–23A–7 (1994 rev.) provides, in relevant part:

"No abortion may be performed upon an unemancipated minor or upon a female for whom a guardian has been appointed because of a finding of incompetency, until at least forty-eight hours after written notice of the pending operation has been delivered in the manner specified in this section. The notice shall be addressed to the parent at the usual place of abode of the parent and shall be delivered personally to the parent by the physician or an agent. In lieu of such delivery, notice may be made by certified mail addressed to the parent at the usual place of abode of the parent with return receipt requested and restricted delivery to the addressee, which means a postal employee can only deliver the mail to the authorized addressee. If

The court's basis for the invalidation was that "*a large fraction* of minors seeking pre-viability abortions would be unduly burdened by [the] statute, despite its abuse exception,"[2] *Planned Parenthood, Sioux Falls Clinic* v. *Miller*, 63 F. 3d 1452, 1463 (1995) (emphasis added).

This decision is questionable enough that we should, since the invalidation of state law is at issue, accord review. Among other things, it rested upon the court's belief that "it seems, South Dakota's abuse exception will sometimes result in parental notification, even if after-the-fact." *Id.*, at 1461. That reasoning is inconsistent with our holding in *Ohio* v. *Akron Center for Reproductive Health*, 497 U. S. 502, 514 (1990), another case involving a parental notification provision, that "[t]he Court of Appeals should not have invalidated the Ohio statute on a facial challenge based upon a worst-case analysis that may never occur." The Eighth Circuit's holding is also dependent on the questionable conclusions (1) that "parental-notice provisions, like parental-consent provisions, are unconstitutional without a *Bellotti*-type bypass," 63 F. 3d, at 1460, see *Bellotti* v. *Baird*, 443 U. S. 622 (1979), and (2) that the South Dakota law's exception for abused

---

notice is made by certified mail, the time of delivery shall be deemed to occur at twelve o'clock noon on the next day on which regular mail delivery takes place, subsequent to mailing."

[2] South Dakota Codified Laws § 34–23A–7 (1994 rev.) sets forth the following exceptions to its notice requirement:

"No notice is required under this section if:

"(1) The attending physician certifies in the pregnant minor's medical record that, on the basis of the physician's good faith clinical judgment, a medical emergency exists that so complicates the medical condition of a pregnant female as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function and there is insufficient time to provide the required notice; or

"(2) The person who is entitled to notice certifies in writing that he has been notified; or

"(3) The pregnant minor declares, or provides information that indicates, that she is an abused or neglected child as defined in § 26–8A–2 and the attending physician has reported the alleged or suspected abuse or neglect as required in accordance with [state law]. In such circumstances, the department of social services, the state's attorney and law enforcement officers to whom the report is made or referred for investigation or litigation shall maintain the confidentiality of the fact that she has sought or obtained an abortion and shall take all necessary steps to ensure that this information is not revealed to her parents."

and neglected minors did not satisfy the need for a bypass procedure, 63 F. 3d, at 1460–1463.

Beyond these issues, however (or, more accurately, preceding them), is another question that virtually cries out for our review. In *United States* v. *Salerno*, 481 U. S. 739 (1987), summarizing a long established principle of our jurisprudence, we observed:

> "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [a legislative Act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *Id.,* at 745.

It has become questionable whether, for some reason, this clear principle does not apply in abortion cases. As I observed three Terms ago in a case very similar to this one, we have sent mixed signals on the question—seemingly employing an overbreadth approach in *Roe* v. *Wade*, 410 U. S. 113 (1973), but explicitly rejecting that approach in such later abortion cases as *Ohio* v. *Akron Center for Reproductive Health, supra,* at 514, and *Rust* v. *Sullivan,* 500 U. S. 173, 183 (1991).[3] In dissenting from denial of certiorari in *Ada* v. *Guam Soc. of Obstetricians & Gynecologists,*

---

[3] See also *Webster* v. *Reproductive Health Services,* 492 U. S. 490, 524 (1989) (O'CONNOR, J., concurring in part and concurring in judgment) ("[S]ome quite straightforward applications of the Missouri ban on the use of public facilities for performing abortions would be constitutional and that is enough to defeat appellees' assertion that the ban is facially unconstitutional"). JUSTICE STEVENS' memorandum in support of the denial of certiorari says that the *Salerno* rule "has been properly ignored in subsequent cases even outside the abortion context." *Ante,* at 1175. If he means by this that the rule has *consistently* been ignored, the statement is proved false by the cases cited here in text, where the rule was both recited and followed. (And there are other post-*Salerno* cases reciting and applying the rule outside the abortion context, see, *e. g., Anderson* v. *Edwards,* 514 U. S. 143, 155–156, n. 6 (1995), and *Reno* v. *Flores,* 507 U. S. 292, 301, 309 (1993).) If, on the other hand, JUSTICE STEVENS merely means that the *Salerno* rule has *sometimes* "been ignored," though it has other times been *applied,* then he makes a good case for granting, rather than denying, certiorari.

506 U. S. 1011, 1013 (1992), I expressed my view that "[t]he Court did not purport to change this well-established rule . . . in *Planned Parenthood of Southeastern Pa.* v. *Casey,* 505 U. S. 833 (1992)." Since then, two Members of the *Casey* majority have expressed their view that *Salerno* is "inconsistent with *Casey.*" See *Fargo Women's Health Organization* v. *Schafer,* 507 U. S. 1013, 1014 (1993) (O'CONNOR, J., joined by SOUTER, J., concurring).

In this case—after reviewing the incompatible pronouncements of the Court's opinions on this subject, and remarking that "even the Justices of the Supreme Court dispute *Casey*'s effect," 63 F. 3d, at 1457—the Court of Appeals concluded, in effect, that *Salerno* had been chewed up by the "ad hoc nullification machine" which is our abortion jurisprudence, *Madsen* v. *Women's Health Center, Inc.,* 512 U. S. 753, 785 (1994) (SCALIA, J., dissenting). The court decided that *Planned Parenthood of Southeastern Pa.* v. *Casey,* 505 U. S. 833 (1992), without so much as alluding to the facial-challenge rule, "effectively overruled *Salerno* for facial challenges to abortion statutes," 63 F. 3d, at 1458. This holding conflicts head on with a post-*Casey* decision of the Fifth Circuit. In *Barnes* v. *Moore,* 970 F. 2d 12, cert. denied, 506 U. S. 1021 (1992), the Fifth Circuit rejected a facial challenge to the Mississippi Informed Consent to Abortion Act. In the process, it said that "[b]ecause the plaintiffs are challenging the facial validity of the Mississippi Act, they must 'establish that no set of circumstances exists under which the Act would be valid,'" 970 F. 2d, at 14, adding that "we do not interpret *Casey* as having overruled, *sub silentio,* longstanding Supreme Court precedent governing challenges to the facial constitutionality of statutes," *id.,* at 14, n. 2. The split between the Fifth and Eighth Circuits is unmistakably clear. The Third Circuit has also weighed in on this question (albeit in dictum), siding with the Eighth Circuit. See *Casey* v. *Planned Parenthood of Southeastern Pa.,* 14 F. 3d 848, 863, n. 21 (1994).

The *Salerno* question could not be more squarely presented. The Court of Appeals explained that *"[t]he critical issue* in this case is . . . what is the standard for a challenge to the facial constitutionality of an abortion law?" 63 F. 3d, at 1456 (emphasis added). It specifically acknowledged that "Planned Parenthood cannot meet the *Salerno* test." *Id.,* at 1457. Had the Court of Appeals not concluded that the *Salerno* rule has been selectively

(and *sub silentio*) nullified in abortion cases, respondents' facial challenge quite simply would have failed.

JUSTICE STEVENS' memorandum in support of the denial of this petition provides even stronger reasons than I have why it should be granted. JUSTICE STEVENS asserts that *Casey* could not possibly have been contrary to the "no set of circumstances" rule because, contrary to the repeated statement of our cases, *that rule never existed.* For that head-snapping proposition, he relies upon no less weighty authority than a law review article by Michael C. Dorf. According to that author, THE CHIEF JUSTICE's statement on behalf of the Court in *Salerno* was not only "wrong" but "draconian." Dorf, Facial Challenges to State and Federal Statutes, 46 Stan. L. Rev. 235, 238, 239 (1994); see *ante,* at 1176. But if that is so, if *Salerno* is a dead letter *even outside of the abortion context,* all the more reason to grant certiorari and make that clear.[4] For the courts of appeals regularly enforce that supposed dead letter, often in cases in which its "draconian" character prevents the facial challenge from succeeding. See, *e. g., Chemical Waste Management, Inc.* v. *United States Environmental Protection Agency,* 56 F. 3d 1434, 1437 (CADC 1995) ("We discern at least one scenario where the off-site rule would be procedurally valid. . . . While this hypothetical scenario may not be common, it is sufficient to establish that petitioners' facial challenge must fail"); *United States* v. *Mena,* 863 F. 2d 1522, 1527 (CA11 1989) ("[T]he defendants have simply failed even to suggest 'that no set of circumstances exists under which the Act would be valid.' Such is the defendant's burden in a case challenging the facial validity of a congressional enactment on other than first-amendment grounds"); *Roulette* v. *Seattle,* 78 F. 3d 1425, 1430 (CA9 1996) ("Plaintiffs have conceded that 'the city may prevent individuals or groups of people from sitting or lying across a sidewalk in such a way as to prevent others from passing.' The Seattle ordinance plainly may be applied to such cases, and plaintiffs' facial substantive due process challenge therefore fails") (ci-

---

[4] While we are in the process of adopting Professor Dorf's revisionist view of *Salerno,* we could also embrace his modest proposal for what ought to replace the rule described in that case. His proposal is not, curiously enough, the regime that JUSTICE STEVENS suggests, but rather total elimination of the distinction between facial and as-applied challenges. Dorf, Facial Challenges to State and Federal Statutes, 46 Stan. L. Rev. 235, 294 (1994).

tation omitted); *Government Suppliers Consolidating Servs., Inc.* v. *Bayh,* 975 F. 2d 1267, 1283 (CA7 1992); *Dean* v. *McWherter,* 70 F. 3d 43, 45 (CA6 1995); *National Treasury Employees Union* v. *Bush,* 891 F. 2d 99, 101 (CA5 1989) ("[B]ecause not every application of the Order would be invalid, the Order is facially valid"); *Jordan* v. *Jackson,* 15 F. 3d 333, 343–344 (CA4 1994); *Giusto* v. *INS,* 9 F. 3d 8, 10 (CA2 1993).

Finally, I cannot let pass without comment JUSTICE STEVENS' suggestion that Fifth Circuit panels might, in future abortion cases, ignore the clear language of *Salerno,* and the Fifth Circuit's own decision in *Barnes,* "given intervening statements by Members of this Court"—by which he means the memorandum of JUSTICE O'CONNOR, joined by JUSTICE SOUTER, concurring in the Court's order of April 2, 1993, denying (without opinion) the application for stay and injunction pending appeal in *Fargo Women's Health Organization* v. *Schafer, supra.* See *ante,* at 1176, n. 2. That the Fifth Circuit *might* give such authoritative effect to this two-Justice concurrence is certainly true; courts of appeals, no less than practitioners, sometimes count votes instead of following cases. But I am surprised to find that practice endorsed by JUSTICE STEVENS, who has hitherto taken a dim view of separate writings appended to discretionary (and unexplained) denials, calling "all opinions dissenting from the denial of certiorari" "totally unnecessary" and "examples of the purest form of dicta." *Singleton* v. *Commissioner,* 439 U. S. 940, 944–945 (1978) (STEVENS, J., respecting denial of certiorari). More fundamentally, I find it hard to understand why one who believes that *Salerno*'s "no set of circumstances" rule is nothing more than unwise, rigid, and inaccurate dictum, *ante,* at 1175, would not seize upon this opportunity "affirmatively to disavow" it, *ante,* at 1176, instead of hoping that the courts of appeals will be induced to abandon it by reading the tea leaves of concurring opinions. Today's denial serves only one rational purpose: It makes our abortion ad hoc nullification machine as stealthful as possible.

For the foregoing reasons, I dissent from the Court's denial of the petition for certiorari.