CAUSEWAY MEDICAL SUITE; Hope Medical Group for Women, on behalf of themselves and the patients they serve, Plaintiffs–Appellees,

v.

Richard P. IEYOUB, Attorney General, State of Louisiana; Michael J. Foster, Jr., Governor, State of Louisiana; Bobby P. Jindal, Secretary of the Louisiana Department of Health and Hospitals; Madlyn B. Bagneris, Secretary of the Louisiana Department of Social Services, Defendants–Appellants.

No. 95–31178.

United States Court of Appeals, Fifth Circuit.

Sept. 23, 1997.

Eve C. Gartner, Kathryn Bernard Kolbert, Center for Reproductive Law & Policy, New York City, William E. Rittenberg, New Orleans, LA, for Plaintiffs–Appellees.

Roy A. Mongrue, Jr., Asst. Atty. General, Thomas S. Halligan, Asst. Atty. General, Baton Rouge, LA, for Defendants–Appellants.

Dorinda C. Bordlee, Metairie, LA, for Louisiana Lawyers For Life, Amicus Curiae.

John H. Henn, Foley, Hoag & Eliot, Boston, MA, for American Public Health Association and American Medical Women's Association, Amicus Curiae.

Robin Elise Schulberg, American Civil Liberties Union Foundation of Louisiana, New Orleans, LA, for American Civil Liberties Union Foundation of Louisiana, Amicus Curiae.

Before POLITZ, Chief Judge, and EMILIO M. GARZA and STEWART, Circuit Judges.

PER CURIAM:

A member of the Court in active service having requested a poll on the reconsideration of this cause en banc, and a majority of the judges in active service not having voted in favor, rehearing en banc is DENIED.

EDITH H. JONES, Circuit Judge, joined by JOLLY, HIGGINBOTHAM, SMITH, BARKSDALE, EMILIO M. GARZA * and DeMOSS, Circuit Judges, dissenting from the denial of rehearing *en banc*:

The panel majority overturned the judicial bypass provision of Louisiana's law governing parental consent for a minor's abortion, because they believe a pregnant immature minor has the absolute right to decide whether her parents may be notified of her predicament.[1] As a consequence, the panel majority held that the bypass court, which must determine if the abortion is in the minor's best interest, may not consult with the parents if the immature minor objects. Further, even if the court believes parental notification would be in the minor's best interest, it may neither act on that belief nor decide the ultimate advisability of an abortion until the minor permits notification. The panel have unblushingly elevated the immature mi-

---

* Judge Garza concurs in dissenting from the denial of en banc rehearing for the reasons expressed in his dissent to the panel opinion herein.

1. The panel majority found other portions of the statute deficient, but the legislature promptly amended those provisions; only the issue of parental notification remains alive.

nor's "right" to keep her parents in the dark above her right to a prompt decision, above the court's need for accurate information about her, and above traditional compelling parental and family interests. Because it is plain to me that this unwise decision is contrary to applicable Supreme Court precedent, we dissent from the denial of *en banc* rehearing.[2]

An explanation of the panel's errors must begin with the relevant portions of the Louisiana law governing parental consent and judicial bypass of the consent requirements for a minor's abortion:

> (5) If the court finds that the minor is not sufficiently mature and well enough informed to make a decision intelligently among the alternatives, the court shall decide whether or not it would be in the best interest of the minor to notify her parents or guardian of the proceedings. If the court finds that it is in the minor's best interest to notify her parents or guardian, the court shall so notify and reconvene the proceedings within 48 hours with the parents or guardian present to advise and counsel the minor and aid the court in making its determination whether or not the abortion would be in the best interest of the minor.
>
> (6) If the court finds that the minor is not competent to make the decision concerning the abortion or that it would not be in the minor's best interest to notify her parents or guardian, the court may issue an order authorizing the abortion if the court finds, by clear and convincing evidence, that the abortion would be in the best interest of the minor.

La.R.S. 40:1299.35.5(B)(5) and (6). These provisions were enacted with an eye toward the Supreme Court's decision in *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II*). In *Bellotti II,* the Court stated that statutes requiring parental consent to a daughter's abortion will be upheld if they contain an adequate procedure for judicial bypass of the consent requirement. The bypass procedure, to pass Supreme Court muster, must authorize the court to determine whether the girl is mature enough to make the decision for an abortion on her own or, if not, whether the abortion is nevertheless in her best interest. A court makes the independent "best interest" decision only after it finds that the minor is immature or not well informed.

This case concerns the application of Louisiana's bypass provision to immature pregnant girls. Louisiana requires the court in such a case to ascertain whether parental notification is in the girl's best interest and if it is, to convene the parents for consultation within 48 hours and then promptly decide the abortion issue.

The conditional obligation to notify parents without the girl's consent is what the panel majority find objectionable. The panel decision holds that *Bellotti II* requires the judicial bypass procedure to be totally anonymous as to the parents, insulated from their input or consultation except at the minor's instigation. The panel states:

> If *Bellotti II* means anything, it surely means that states seeking to regulate minors' access to abortion must offer a credible bypass procedure, independent of parents or legal guardians, in a parental consent statute like the one in Louisiana.... [T]he Court has *not* held that anonymity may give way to parental notification in bypass statutes.

*Causeway Medical Suite v. Ieyoub,* 109 F.3d 1096, 1112 (5th Cir.1997). The panel explains its concern about parental involvement in the judicial bypass proceeding as follows:

> The central thrust of *Bellotti II* was to insure that minors who could not or would not seek the consent of a parent or legal guardian have access to a bypass procedure that would insure anonymity from

**2.** The issue of a minor's right to complete confidentiality from her parents during a judicial bypass proceeding is completely different from the minor's right to seek an abortion in the first place. One need not be a critic of the Supreme Court's decisions on the latter point, as I am, *see Barnes v. Moore,* 970 F.2d 12 (5th Cir.), cert. denied, 506 U.S. 1021, 113 S.Ct. 656, 121 L.Ed.2d 582 (1992), in order to criticize the *Causeway* anonymity principle. Further, ·one may agree or disagree with Judge Emilio M. Garza's dissent in this case, *see* 109 F.3d at 1113, and still adopt this dissent's critique of the panel majority.

parents who may "obstruct both an abortion and their access to court." *Bellotti II,* 443 U.S. at 647, 99 S.Ct. at 3050. By requiring a juvenile court judge to notify a minor's parents if the judge finds that doing so would be ·in the minor's best interest, Louisiana has undermined the independent bypass procedure prescribed in *Bellotti II.*

*Causeway,* 109 F.3d at 1112.

Unfortunately, this conclusion reflects a fundamental misunderstanding of *Bellotti II* and subsequent Supreme Court cases concerning the permissible scope of parental involvement in the abortion decision.

While the Court has held that minors who are sufficiently mature and well-informed must be permitted to obtain abortions, it has also upheld statutes requiring parental consent on the basis that they preserve and protect the integrity of family life. These two seemingly irreconcilable policies are satisfied by statutory procedures that allow a minor to bypass parental consent with a prompt judicial decision. When, under *Bellotti II,* a pregnant girl seeks court authorization rather than parental consent, the court first decides whether she is sufficiently mature to make the abortion decision on her own.[3] If the court cannot so conclude, the girl "must be permitted to show that an abortion nevertheless would be in her best interest. If the court is persuaded that it is, the court must authorize the abortion." *Bellotti II,* 443 U.S. at 647–48, 99 S.Ct. at 3050. It necessarily follows that if the court finds that the girl is not mature or that the abortion would not be in her best interest, it may decline to authorize the procedure. *Id.*

A judicial bypass prevents the parents from exercising "an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy...." *Id.* at 643, 99 S.Ct. at 3048. The "anonymity" of the proceeding protects the minor's initial access to court. Thus, the *Bellotti II* Court quoted with approval the finding of the district court that "there are parents who would obstruct, and perhaps altogether prevent, the minor's right to go to court." *Id.* at 647, 99 S.Ct. at 3050 (internal citation omitted). The Court continued:

> [E]very minor must have the opportunity—if she so desires—to go directly to a court without first consulting or notifying her parents.

*Id.* *Bellotti II* concluded, "[T]he constitutional right to an abortion may not be unduly burdened by state-imposed conditions upon *initial access to court." Id.* at 648, 99 S.Ct. at 3051 (emphasis added).

Notwithstanding *Bellotti II*'s emphasis on confidentiality to enable the minor to go to court, the *Causeway* panel majority derive a much broader constitutional principle from *Bellotti II:* that the immature minor has an inviolable right to confidentiality from her parents during the bypass proceeding.[4] They hold that Louisiana's requirement of parental notification in the immature minor's best interest is unenforceable. As a result, the bypass court may not act on its insight into the immature minor's needs by notifying her parents unless she consents. And going further, the panel holds, if the immature girl exercises her veto power, the court is at a standstill—it may not act on her bypass request when she refuses to consent to needed parental notification. The girl will be denied

---

**3.** If the court finds her sufficiently mature to make the abortion decision, that is the end of the matter. Neither the court nor the parents can tell her what to do.

**4.** Although its careful drafting is overlooked by the panel, the Louisiana statute does not require parental notification at all in the case of mature minors, and it does not invariably require parental notification regarding immature minors. The panel majority seems to disregard that the parental notification decision is conditioned on a discretionary finding that notification is in the girl's best interest. Indeed, it is most likely that a

juvenile court would find parental notification "not in the best interest" of an immature minor in cases—such as those involving incest or abusive parents—where the concern of *Bellotti II* for protection of the minor's "anonymity" is strongest. On the other hand, notification would be found "in the minor's best interest" where there is a strong and stable family, albeit one in which an adolescent feels misunderstood, for such a family relationship is the type sought to be preserved in *Bellotti II*'s recognition of "encouraging a family rather than a judicial resolution of a minor's abortion decision." 443 U.S. at 648, 99 S.Ct. at 3050.

an abortion decision unless she changes her mind on parental notification, *see Causeway,* 109 F.3d at 1112, but she may change it too late.

If this were the constitutional requirement after *Bellotti II,* it would make no sense in terms of the policy behind the consent/bypass decisions of the Supreme Court. Judicial bypass proceedings must facilitate decisions on abortion. Maintaining the minor's secrecy from her parents at all costs may deny her a timely bypass decision. The panel majority's interpretation of *Bellotti II,* however, makes secrecy more important than the abortion decision, because if the immature minor is given the absolute veto over parental notification, the court may not act and must deny or defer her bypass petition.

Not only is the *Causeway* panel's insistence on anonymity at all costs inconsistent with the demand for expeditious decision-making, it is otherwise inconsistent with *Bellotti II.* First, in *Bellotti II,* the Supreme Court recognized "an important state interest in encouraging a family rather than a judicial resolution of a minor's abortion decision." *Bellotti II,* 443 U.S. at 648, 99 S.Ct. at 3050. The Court carefully articulated parents' interest in the welfare of their children and stated that these "factors may properly be taken into account by a court called upon to determine whether an abortion in fact is in a minor's best interest." *Id.* The Court then stated:

> On the other hand, the court may deny the abortion request of an immature minor in the absence of parental consultation if it concludes that her best interest would be served thereby, *or the court may in such a case defer decision until there is parental consultation in which the court may participate. But this is the full extent to which parental involvement may be required.*

*Id.* at 648, 99 S.Ct. at 3050-51 (footnote omitted). (emphasis added). The highlighted language in no way conditions parental consultation on the say-so of the immature minor. This conclusion is reinforced by footnote 28, following the statements just quoted:

> 28. Of course, if the minor consults with her parents voluntarily and they withhold

consent, she is free to seek judicial authorization for the abortion immediately.

*Id.* at 648 n. 28, 99 S.Ct. at 3051 n. 28. If the only kind of approved parental consultation were that which the minor initiates, this footnote would be superfluous. The most reasonable interpretation of the entire passage is that a court may seek the non-binding opinion of the parents when appropriate to "encourage a family rather than a judicial resolution of a minor's abortion decision."

Second, as *Bellotti II* explained, there are alternatives to abortion: marriage to the father of the child, arranging for an adoption, or assuming the responsibilities of motherhood with the assured support of the family. *Id.* at 642-44, 99 S.Ct. at 3048. After the bypass court has determined that the child is immature or not sufficiently informed to make an abortion decision on her own, it seems obvious that the consequences of alternative decisions ought to be explored in conjunction with information and advice provided by the family which would have to live with the consequences. It also seems obvious that the minor, already found too immature to make the abortion decision herself, would rarely be sufficiently mature to entrust with sole discretion on the vital question of parental notification. *Bellotti II* indulges no such *non sequitur,* but the *Causeway* decision enshrines it.

Finally, *Bellotti II* offers no reason why complete anonymity from parents is required, if the minor insists, to effectuate a judicial bypass. The Court summarized the unconstitutionality of the Massachusetts parental consent statute without specific reference to anonymity:

> [The statute] requires parental consultation or notification in every instance, without affording the pregnant minor an opportunity to receive an independent judicial determination that she is mature enough to consent or that an abortion would be in her best interests.

*Id.* at 651, 99 S.Ct. at 3052. The Court could have stated here that unwanted parental notification can never be squared with judicial bypass, but it did not. The real purpose of a judicial bypass is to enable an individual

abortion decision by a mature minor or an independent judicial decision for an immature minor. An independent judicial decision does not, however, utterly foreclose to the court the possibility of mandated parental notification or consultation. *Bellotti II* simply does not say or imply, as the panel puts it, that the court must wait "until the minor herself seeks parental consultation" in such a case. *Causeway*, 109 F.3d at 1112.

Subsequent Supreme Court decisions confirm my reading of *Bellotti II.* In *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 513, 110 S.Ct. 2972, 2980, 111 L.Ed.2d 405 (1990) (*Akron II* ), the Court emphasized that confidentiality is not the same as anonymity, and complete anonymity is not constitutionally critical. Taken in context, *Akron II* promotes confidentiality to protect the minor's name from unauthorized, illegal disclosure by state employees. 497 U.S. at 512–14, 110 S.Ct. at 2980. The fear of unauthorized disclosure is a completely different matter from preventing parental notice of the judicial procedure against the immature girl's wishes. By way of illustration, in *Bellotti II,* the Court approved the Massachusetts statute to the extent it provided:

> The proceeding need not be brought in the minor's name and steps may be taken ... *to preserve confidentiality as to the minor and her parents.*

*Id.* at 645, 99 S.Ct. at 3049 (emphasis added) (internal citation omitted). Inferentially, then, the Court condoned a statute in which it is assumed that under certain circumstances, parents will be involved, and their confidentiality, like that of their daughter, is to be protected.

In *Planned Parenthood v. Casey*, 505 U.S. 833, 895–97, 112 S.Ct. 2791, 2830, 120 L.Ed.2d 674, the Court, while overturning a spousal notification requirement, reaffirmed its support for the decisions upholding parental notification or consent requirements. As the Court put it:

> Those enactments, and our judgment that they are constitutional, are based on the quite reasonable assumption that minors will benefit from consultation with their parents *and that children will often not*

*realize that their parents have their best interests at heart.*

*Id.* (emphasis added) Surely, this observation suggests that where a minor has been found immature and unable to make the abortion decision on her own, she may also lack the maturity to understand why her parents ought to be consulted. In such event, the court, consistent with *Casey,* may seek the opinions, information and guidance of parents in reaching its ultimate decision on the minor's "best interest."

Finally, the Court's decision in *H.L. v. Matheson,* 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981), cannot be reconciled with an interpretation of *Bellotti II* that would forbid parental involvement in the court's decisionmaking process without the immature minor's consent. *Matheson* upheld the facial constitutionality of a statute requiring a physician to give pre-abortion notification to parents of a minor, dependent daughter who has made no claim or showing as to her maturity or as to her relations with her parents. 450 U.S. at 406–08, 101 S.Ct. at 1170. The Court upheld this statute on two grounds. First, it cited numerous decisions recognizing the importance of the family in society and of allowing the parents to influence their children's choices. Second, it pointed out that the Utah notification statute gave neither parents nor judges a veto power over the minor's abortion decision. Nevertheless, the Court recognized that,

> [T]he requirement of notice to parents may inhibit some minors from seeking abortions ... *the Constitution does not compel a state to fine-tune its statutes so as to encourage or facilitate abortions.*

450 U.S. at 413, 101 S.Ct. at 1173. (emphasis added). *Matheson* holds that compulsory parental notification is constitutionally permissible and vital for immature, dependent minors. Not only does notification protect family integrity, but it also assists in protecting the immature girl by providing her parents an opportunity to convey accurate medical and psychological history and information to the doctor.

As I interpret *Bellotti II,* parental notification would serve precisely the same role in a judicial bypass proceeding as in *Matheson.*

That is, after the court has determined that the girl is immature and not able to make an abortion decision on her own, the court may notify and consult with her parents to obtain the same kinds of information deemed crucial in *Matheson*. Such information is just as necessary to the bypass court's decisionmaking as it is to the physician's treatment in *Matheson*. Because the ultimate "best interest" decision remains with the court even after parental consultation under a bypass statute, that statute may actually be more protective of a girl's "right" to an abortion. Mandatory notification statutes afford the family *an opportunity to influence their daughter*; once a court has decided to give the parents notice, she is "at their mercy" more completely than in any bypass proceeding. *See Matheson*, 450 U.S. at 412, 101 S.Ct. at 1173.

Moreover, if one views anonymity not as an end in itself, but as a protection for a mature minor, the decisions concerning consent and notification statutes are harmonious. Anonymity gets the minor into court initially and shields the *mature* minor from her parents in both cases, but the best interest test of notification—whether in a consent bypass or a notification proceeding—enables the court to act efficiently, advisedly, and humanely regarding *an immature minor*.

In the final analysis, it makes no sense to maintain that compulsory parental notification with regard to immature, dependent minors is fundamentally important, *see Matheson*, but that parental notification may not play any role in a judicial bypass proceeding unless the immature minor permits it. The Supreme Court has not so held, but that is the necessary discontinuity inherent in the *Causeway* decision.

The *Causeway* panel's error is reconfirmed by the Supreme Court's recent decision in *Lambert v. Wicklund*, —— U.S. ——, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997), which upheld Montana's mandatory parental notification law containing a judicial bypass provi-

sion when notification is not in the best interests of the minor. In application, Louisiana's bypass provision is distinct from a notification law only in that the court maintains authority to grant or deny the minor's request for an abortion.[5] The parents, by being notified of their daughter's situation, gain no veto power over the court's ultimate decision, but only the right to inform and advise the court. It is thus next to impossible to reconcile the Supreme Court's *Lambert* decision upholding the constitutionality of a statute mandating parental notification unless the minor makes a showing by clear and convincing evidence that notification is not in her best interests, —— U.S. at ——, 117 S.Ct. at 1170, with the *Causeway* decision holding unconstitutional a statute mandating parental notification if the court finds it is in the minor's best interest to *notify* (not seek the consent of) her parents.

The ultimate casualties of the panel's self-defeating anonymity-at-all-costs principle are the immature girl and the institution of the family. The panel majority is willing to halt the bypass process when the girl disagrees with the court about notifying her parents. Time wears on ... the pregnancy progresses ... and the speed of the process, deemed essential by *Bellotti II*, is stymied.[6] The law, which gave her this judicial bypass procedure to protect her best interest—is not permitted to protect her at all. It is also not uncommon that a pregnant teen suffers from obstetrical problems or lack of prenatal care without realizing the cause of her ailments. Yet because she is immature and "will often not realize that [her] parents have her best interest at heart,"[7] she might well be reluctant to permit parental notification by the court. Another disturbingly frequent scenario reveals a young girl, impregnated by and under the influence of an older man, who seeks a judicial bypass to keep her parents in the dark and continue her self-destructive affair after the abortion. The panel's mis-

---

5. An important distinction, discussed *supra*, but as noted one which would seem to be more protective of a minor's right to an abortion in comparison to a pure notification law.

6. "Nonetheless, the abortion decision is one that simply cannot be postponed, or will be made by

default with far-reaching consequences." *Bellotti II*, 443 U.S. at 643, 99 S.Ct. at 3048.

7. *Planned Parenthood v. Casey*, 505 U.S. 833, 895–97, 112 S.Ct. 2791, 2830, 120 L.Ed.2d 674 (1992).

construction of *Bellotti II* could directly and seriously injure these girls.

The other victim of the panel's anonymity at-all-costs principle is the family. There are undoubtedly seriously dysfunctional or abusive families who do not deserve notice of an immature daughter's pregnancy, but no one asserts they are a majority. Ordinary parents, loving and sensitive, want to share in their daughter's upbringing, to alleviate her anguish and fears, and care for her. No policy, much less a constitutional principle, justifies forbidding these ordinary good parents to know or assist in handling one of the most tragic events of a young daughter's life. They will, after all, live with the consequences of whatever decision the court makes. The panel majority make no attempt to justify putting the immature daughter's "right" to anonymity ahead of her family's rights. The casualness with which judicial fiat discards parental rights is disturbing.

This is an important decision because families as well as immature minors have rights. It does not infringe on the minor's right to seek a judicial bypass if the bypass court must also determine whether notifying her parents is in her best interest; the court bears ultimate responsibility under Louisiana law to authorize or deny an abortion. By enacting a limited parental notification requirement, Louisiana's legislature sought to expand the scope of information available to the court making this most intimate psychological and physiological decision. The legislature attempted to protect parents' rights to the greatest extent consistent with the Supreme Court-mandated bypass proceeding. Contrary to the panel majority's decision, I believe the legislature acted on solid ground. I trust the Supreme Court will disavow this unwise misinterpretation of its precedents.

I respectfully *DISSENT*.