WILKINSON, Chief Judge,
concurring:
The great turn-of-the-century astronomer, Percival Lowell, contributed much to our knowledge of the planets and the vastness of the cosmos. Pluto is named after him, the first two letters of its name being Percival Lowell’s own initials. Lowell’s lifelong passion, however, was the planet Mars. See generally William G. Hoyt, Lowell and Mars (1976).
Working from his observatory on Mars Hill in Flagstaff, Arizona, Lowell became convinced that Mars teemed with life. The lines on the planet’s surface seemed to him a vast network of canals, a huge planetary distribution system. Perhaps not surprisingly, the astronomer’s theories on Mars bore an uncanny resemblance to Lowell’s life on Earth, the extraterrestrial engineering feats mirroring the industrial revolution of the late nineteenth century and the Martian irrigation ditches alleviating conditions like those found in the observatory’s own American Southwest. Fanned by Lowell’s observations, a popular belief in a populated Mars took root. Id.
Lowell, of course, sought scientific truth, while we, as judges, go in search of legal, ethical, or philosophic certainty. Yet judges, no less than astronomers, have but a blurred, imperfect gaze upon the objects of their passions. Truth is as elusive to those learned in the law as to those versed in the stars, clouded as it is by new discovery and deep complexity.
Judges’ observations need not resolve every highly-charged debate. In Hoffman v. Hunt, 126 F.3d 575 (4th Cir.1997), this circuit properly upheld the constitutionality of the Freedom of Access to Clinic Entrances Act of 1994, in which Congress acted to prevent nationwide violence and obstruction of access at abortion facilities. See also American Life League, Inc. v. Reno, 47 F.3d 642 (4th Cir.1995). And today, this court sustains the constitutionality of Virginia’s parental notification law. The binding principle of these decisions is not one of political philosophy, but of judicial restraint.
The astronomers of the bench do not have all the answers to such questions as: When does human life begin? Where does the role of the state in intimate decisions end? The perplexity of these questions perhaps explains why Americans remain so deeply and so passionately divided on the answers. On matters touching profound moral beliefs and intimate human freedom, a democratic system holds forth no prospect of agreement. What it does promise is a compromise that *385 disenfranchises no one and that, though fully satisfactory to few, may be partly satisfactory to many.
The compromise reached here, the Virginia Parental Notification Act, imposes only the mildest form of regulation upon the fundamental constitutional right to terminate an unwanted pregnancy. Va.Code § 16.1— 241(V). The Act prescribes notification, not consent, and requires informing one parent, not two. The Act contains exemptions for medical emergencies and situations where the minor has been the victim of parental abuse or neglect. And the Act allows judicial bypass of the notification requirement both for mature minors who are capable of giving informed consent to an abortion and for any minor if an abortion without notice would be in her best interests. Though petitioners object that the Act says a court “may” rather than “must” waive notification in these circumstances, the Act is certainly susceptible to a construction that avoids this objection. Finally, the Act provides an array of procedural safeguards: a minor seeking to avail herself of the by-pass procedure may act on her own behalf or the court may appoint a guardian ad litem; the minor shall be advised of her right to counsel and may request that counsel be appointed to represent her; all proceedings pursuant to the Act are confidential; and the Act outlines an expedited schedule for hearing by-pass petitions and deciding appeals from adverse rulings. If the Act were a consent statute or otherwise imposed more onerous burdens on the abortion right, we would have a very different case.
To be sure, the legislative compromise here does not please everyone. The law does not go so far as to satisfy those who would condition abortion on the giving of parental consent. And it goes too far for those who would leave the decision of whether to consult a parent solely in the hands of a minor. The procedure for bypassing parental notification may be too cumbersome for some, and it may be too porous for others. But such things inhere in the nature of compromise. Here, the compromise was reached after more than a decade of public debate. Virginia has taken a modest step to promote the consultation of parent and child in reaching the profound decision to terminate an unwanted pregnancy. This is not, as I read the Supreme Court’s ease law, an illegitimate exercise in democracy. So long as the core constitutional right is safeguarded, I understand the Court to say that democratic debate, at least at the margins, may continue. For all its raucous moments, such debate may ultimately unify Americans more than the Lowellian solution of a court.
WIDENER, Circuit Judge,
concurring:
I.
I concur in the result, and I concur in the majority opinion.
II.
Left to my own devices, I would arrive at the same result by a more direct route. In my opinion, under existing precedent, a Virginia court which has found an infant to be mature but has declined to authorize an abortion upon request of the infant, has abused its discretion. So the use of “may” in the Virginia statute, which has caused all the commotion here, is of no moment. Along the same line, the infant may have chosen the notice route, or she may have chosen the bypass route. Since the statute, however, contains a bypass procedure for a mature infant, the fact that she may choose the notice route is a matter of indifference, and that aspect of the statute does not invalidate it.
As the Virginia statute is thus construed, our ease is indistinguishable from Akron II.
MICHAEL, Circuit Judge,
concurring in the judgment:
The Virginia Parental Notice Act requires that unmarried women under eighteen notify their parents before they can obtain an abortion. The statute contains an exception to the notice requirement, however: if a Virginia juvenile court judge finds that the minor is mature and capable of giving informed consent, the judge “may authorize a physician to perform an abortion.” Va.Code § 16.1-24KV). The plaintiffs argue that this *386 statute gives a judge discretion to force a young (minor) woman to notify her parents before she can exercise her constitutional right to obtain an abortion, even if the judge concludes that she is mature and capable of informed consent. However, if “may” means “must,” the statute would meet what I believe is the constitutional requirement that a parental notice statute have a mandatory judicial bypass for mature minors.
The United States Supreme Court has never directly decided whether a parental notice statute must accord mature minors a mandatory judicial bypass. The majority takes this as an invitation to ignore the implication of the Court’s clear statements that the state’s interest in encouraging parental involvement in the abortion decision must give way to a mature minor’s constitutional right to obtain an abortion. It then overlooks the harmful consequences (physical and psychological abuse) that will surely befall many mature minors if all are forced to tell their parents of their wish to have an abortion. These harmful consequences cannot be ignored because under Casey they must be considered in determining whether a statute poses an undue burden on the abortion right. Yet the majority refuses to recognize that a parental notice statute without a mandatory bypass brings the prospect of abuse and intimidation for a large fraction of mature young women who choose an abortion but who do not wish to notify their parents. As a result, the majority comes to the erroneous conclusion that a statute lacking a mandatory bypass would not pose an undue burden on a mature minor’s right to an abortion. Because I believe the majority misreads the thrust of what the Supreme Court has said and refuses to recognize the harms that make parental notice statutes without a mandatory bypass an undue burden, I cannot join in its opinion.
However, the Virginia statute must be construed by the Virginia courts in accordance with the United States Constitution. Under Virginia law a statute that employs the word “may” will be interpreted to be mandatory rather than permissive if that is what the Constitution requires. Since the Constitution requires Virginia state judges to permit mature young women to obtain abortions without parental notice, the word “may” must be interpreted as a mandatory term. For that reason alone, I concur in the judgment that the Virginia statute is not unconstitutional on its face.
I.
I agree with the majority that the Supreme Court has never squarely held that a parental notice statute requires a mandatory judicial bypass just like a parental consent statute does. See Lambert v. Wicklund, 520 U.S. 292, 117 S.Ct. 1169, 1171, 137 L.Ed.2d 464 (1997). However, I do not understand how the majority can transform this lack of a square holding into “substantial authority” for the proposition that mature minors may be forced to notify their parents before exercising their right to choose an abortion. See ante at 367. This flies- in the face of twenty years of clear indications by the Court that mature minors share the same rights as adult women in exercising the abortion right. I believe there is little doubt that, if squarely presented with the issue, the Court would require a mandatory judicial bypass for mature minors.
The Supreme Court’s insistence on the preservation of a mature minor’s constitutional right to obtain an abortion free of parental obstacles has its origins in Bellotti v. Baird, 443 U.S. 622, 647, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (Bellotti II). In Bellotti II the Court struck dowm a statute requiring that parents be notified of their minor daughter’s desire to seek an abortion before she could obtain judicial consent, even though the Commonwealth of Massachusetts attempted to justify this requirement on the ground that it enabled the parents to argue in court that an abortion would not be in the minor’s best interests. Writing for a four-Justice plurality, Justice Powell said, “[i]f [a minor] satisfies the court that she is mature and well enough informed to make intelligently the abortion decision on her own, the court must authorize her to act without parental consultation or consent.” Id. at 647, 99 S.Ct. 3035 (plurality opinion) (emphasis added). While, as the majority notes, this statement did not command a majority, subsequent opinions *387 have demonstrated the continued vitality of the statement that mature minors must be permitted to receive an abortion without parental notice. See, e.g., Hodgson v. Minnesota, 497 U.S. 417, 453-54, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (“the constitutional defects that Justice Powell identified in the statute [in Bellotti II ] — its failure to allow a minor who is found to be mature and fully competent to make the abortion decision independently and its requirement of parental consultation even when an abortion without notification would be in the minor’s best interests — are predicated on the assumption that the justification for any rule requiring parental involvement in the abortion decision rests entirely on the best interests of the child” (citing Bellotti II) (emphasis added, footnote deleted)).
In H.L. v. Matheson, 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388.(1981), the majority opinion declined to consider whether the Constitution required a mandatory judicial bypass for mature minors in a parental notice statute because the plaintiff did not argue that she was a mature minor. See id. at 406, 101 S.Ct. 1164. However, Justice Powell (in a separate concurrence joined by Justice Stewart) said that “a State may not validly require notice to parents in all cases, without providing an independent decision-maker to whom a pregnant minor can have recourse if she believes that she is mature enough to make the abortion decision independently or that notification otherwise would not be in her best interest.” Id. at 420, 101 S.Ct. 1164 (Powell, J., concurring). In the same case Justice Marshall noted in a four-vote dissent that the Court was “not questioning] that exceptions from a parental notice requirement are necessary ... for minors able to demonstrate their maturity.” Id. at 428 n. 3, 101 S.Ct. 1164 (Marshall, J., dissenting). When the votes for Justice Powell’s concurrence and Justice Marshall’s dissent are combined, six justices agreed that a mature minor cannot be required to notify her parents before obtaining an abortion.
This principle was explicitly approved by the Court in Akron v. Akron Center for Reproductive Health, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (Akron I), overruled in part on other grounds by Planned Parenthood v. Casey, 505 U.S. 833, 881-83, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). The Court there held that a statute requiring parental notice for all minors under the age of fifteen without a case-by-ease determination of whether a minor is mature is unconstitutional. The Court recognized the state’s considerable interest in protecting children and encouraging parental involvement in such a weighty decision as whether to have an abortion, an interest the majority highlights in its opinion today. Nevertheless, the Court indicated that “these state and parental interests must give way to the constitutional right of a mature minor” to obtain an abortion. Id. at 428 n. 10, 112 S.Ct. 2791 (citing Justice Powell’s concurrence and Justice Marshall’s dissent in Matheson) (emphasis added).
I agree with the majority that a minor child’s parents have a major interest in guiding the child’s decisions, particularly on the important choices surrounding the matter of abortion. In Planned Parenthood v. Casey, 505 U.S. 833, 895, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), the Court recognized that it had upheld some parental notice or consent statutes as constitutional “on the quite reasonable assumption” that minors benefit from consultation with their parents.[1] On this point the Court referred to its prior decisions in Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (Akron II), Bellotti II, and Planned Parenthood v. Danforth, 428 U.S. 52, 74, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). See Casey, 505 U.S. at 895, 112 S.Ct. 2791. Those decisions approved only those statutes that permitted mature minors to opt out of the parental notice or consent provision through a mandatory judicial bypass. See, e.g., Akron II, 497 U.S. at 510-12, 110 S.Ct. 2972 (upholding parental notice statute *388 because it contained a mandatory judicial bypass for mature minors). This is consistent with the Court’s prior statement in Akron I that a mature minor’s constitutional right to an abortion outweighs the interests of the state and parents to require that the minor notify her parents about a planned abortion.
The Court’s statements in these cases make clear that once a minor is found to be mature and capable of making an informed choice, she must be given the same consideration as an adult woman when it comes to her constitutional rights. See Bellotti II, 443 U.S. at 647, 99 S.Ct. 3035 (plurality opinion); Akron I, 462 U.S. at 428 n. 10, 103 S.Ct. 2481; Hodgson, 497 U.S. at 453-54, 110 S.Ct. 2926. Thus, the state cannot impose any restrictions on a mature minor’s right to choose an abortion that cannot be imposed on an adult woman. See Planned Parenthood v. Miller, 63 F.3d 1452, 1460 (8th Cir.1995) (Arnold, C.J.), cert. denied sub nom. Janklow v. Planned Parenthood, 517 U.S. 1174, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996); see also Causeway Medical Suite v. Ieyoub, 123 F.3d 849, 851 n. 3 (5th Cir.1997) (Jones, J., dissenting from denial of reh’g en banc) (Under Bellotti II “[i]f the court finds [a young woman] sufficiently mature to make the abortion decision, that is the end of the matter. Neither the court nor the parents can tell her what to do”). Until today, this principle has led every circuit considering the issue to conclude that any statute which forbids mature minors from obtaining abortions without parental notice is unconstitutional unless it provides a mandatory judicial bypass. See, e.g., Causeway Medical Suite v. Ieyoub, 109 F.3d 1096, 1104-06 (5th Cir.1997), reh’g en banc denied 123 F.3d 849 (5th Cir.), cert. denied, — U.S. -, 118 S.Ct. 357, 139 L.Ed.2d 278 (1997); Miller, 63 F.3d at 1459-61; Zbaraz v. Hartigan, 763 F.2d 1532, 1536 (7th Cir.1985), aff'd by an equally divided court, 484 U.S. 171, 108 S.Ct. 479, 98 L.Ed.2d 478 (1987); Indiana Planned Parenthood Affiliates Assoc. v. Pearson, 716 F.2d 1127, 1134 (7th Cir.1983) (A parental notice statute “constitutionally cannot ... give the juvenile court the authority to refuse to waive notification despite a finding that the minor is mature”). Against this background, I cannot agree with the majority’s conclusion that the Constitution allows a state to forbid mature minors from exercising their right to an abortion unless they first notify their parents.
II.
In evaluating the constitutionality of the Virginia Parental Notice Act, the majority purports to apply the Supreme Court’s test in Casey. Under this test if a statute restricting abortion has “the effect of placing a substantial obstacle in the path of a woman’s choice,” it is invalid on its face. In its analysis the majority only considers one possible effect of a statute that forces mature minors to notify their parents before having an abortion: that the minors may be “exposed to [their] parents’ views” on the abortion decision. Ante at 371. Unsurprisingly, the majority finds this effect not to be a substantial obstacle to the rights of mature minors, and it concludes that the Virginia statute is constitutional.
The majority’s analysis slights the real and very serious consequences that a requirement of parental notification without a mandatory judicial bypass would have for many mature young women who have very good reasons to avoid parental notice. These reasons include the fear and prospect of physical and psychological abuse by parents. The Supreme Court has held in the spousal notification context that these fears have the unconstitutional effect of placing a substantial obstacle in the path of a woman’s right to choose abortion. Because many mature minor women would reasonably have similar fears of abuse under a parental notification statute without a mandatory judicial bypass, such a statute is also unconstitutional.
A.
In Casey the Supreme Court established a clear test for determining whether a statute restricting abortion could survive constitutional scrutiny. A statute is invalid on its face if it places an undue burden on a woman’s right to have an abortion. An undue burden exists if the state regulation has “the effect of placing a substantial obstacle in the *389 path of a woman’s choice” to obtain an abortion. Casey, 505 U.S. at 877, 112 S.Ct. 2791 (joint op. of O’Connor, Kennedy, and Souter, JJ.). A statute that creates a substantial obstacle for a large fraction of those women affected by the regulation creates an undue burden and is facially unconstitutional. See id. at 894-95, 112 S.Ct. 2791.[2]
In Casey the Court evaluated the constitutionality of a Pennsylvania statutory provision that required spousal notification before a married woman could obtain an abortion. The Court focused its analysis on the effects of the provision on “married women selecting abortions who do not wish to notify their husbands.” Id. at 895, 112 S.Ct. 2791. Relying on extensive factfinding by the district court, the Court concluded that several factors would tend to dissuade a large fraction of this class of women from seeking abortions even if they were legally entitled to one. These factors included the very real and tragic possibility of physical abuse. The Court noted that there is considerable undisputed evidence that violence against wives by their husbands is all too prevalent, affecting thousands of women every day . It further recognized that “[m]ere notification of pregnancy is frequently a flashpoint for battering and violence within the family. The number of battering incidents is high during pregnancy and often the worst abuse can be associated with pregnancy.” Id. at 889, 112 S.Ct. 2791 (citation and internal quotations omitted).
The Casey Court also considered evidence of non-physical abuse or coercion that could prevent women from seeking an abortion. The Court observed:
Many [women] may fear devastating forms of psychological abuse from their hus *390 bands, including verbal harassment, threats of future violence, the destruction of possessions, physical confinement to the home, the withdrawal of financial support, or the disclosure of the abortion to family and friends. These methods of psychological abuse may act as even more of a deterrent to notification than the possibility of physical violence, but women who are the victims of the abuse are not exempt from [the] notification requirement.
Id. at 894, 112 S.Ct. 2791. The Court ultimately concluded that because of the danger of physical and psychological abuse facing a large fraction of married women who do not wish to notify their husbands about a planned abortion, a spousal notice statute posed the same undue burden on women as a statute giving the husband veto power over his wife’s decision to have an abortion.
Whether the prospect of notification itself deters such women from seeking abortions, or whether the husband, through physical force or psychological pressure or economic coercion, prevents his wife from obtaining an abortion until it is too late, the notice requirement will often be tantamount to the veto found unconstitutional in Danforth. The women most affected by this law — those who most reasonably fear the consequences of notifying their husbands that they are pregnant — are in the gravest danger.
Id. at 897, 112 S.Ct. 2791. The court accordingly struck down the spousal notice provision as facially unconstitutional. See id.
B.
As I have said, the majority purports to apply the Casey “undue burden” standard in considering whether the Virginia parental notice statute passes constitutional muster. See ante at 367. But instead of addressing the real effects of a mandatory parental notice statute, the majority builds a man of straw which it finds easy to knock down. The only possible effect of parental notice that the majority even considers is that the minor “may be exposed to her parents’ views” on the abortion decision. Ante at 371. By suggesting only such a minor burden, the majority is able to dismiss it with ease by asserting that parents have the right to guide their children through moral suasion.
The majority’s argument fails to acknowledge the serious effects that parental notice of an abortion has for many young women under eighteen. It does not address the evidence in the record that a very real danger of physical and psychological abuse exists for a large fraction of those young women who would be forced (against their will) to notify their parents that they are pregnant and considering an abortion. These dangers are not only virtually identical to those which caused the Supreme Court to invalidate a spousal notification provision in Casey, but in one way the dangers are even more pronounced for mature minors. These young women are by definition dependent on their parents and therefore particularly vulnerable to the fear of parental abuse or coercion.
The most detrimental burden of a statute without a mandatory mature minor bypass would be the risk of physical harm to the minor by a parent. There is no doubt that child abuse is a pervasive problem in our society. See Council on Ethical and Judicial Affairs, American Medical Assoc., Mandatory Parental Consent to Abortion, 269 JAMA 82 (1993) (noting that there are about 1.5 million cases of child abuse every year in the United States). The Supreme Court itself recognizes a strong relationship between spousal abuse and child abuse. See Casey, 505 U.S. at 891, 112 S.Ct. 2791. One study, which is in our record, reveals that six percent of those minors who did not tell their parents about their pregnancy and abortion feared that they would be beaten if their parents found out. Yet the majority never acknowledges the possibility that a parent may abuse a child who reveals that she is considering an abortion.[3]
*391 While the Virginia statute does provide an exception for abused minors who meet certain criteria, these statutory requirements do not address the concerns of most young women who may be exposed to abuse. The Virginia statute only provides an exception for those eases where (1) the minor declares that she is abused and (2) the physician “has reason to suspect” that she is telling the truth and (3) the physician reports the abuse to the authorities. See Va.Code § 16.1-241 (V). This procedure will not catch many of the cases where a parent might resort to physical abuse to dissuade a minor daughter from seeking an abortion. Child abuse, like spousal abuse, is shrouded in secrecy, and an abused young woman will be very reluctant to reveal her plight to a doctor she has just met. Cf. Casey, 505 U.S. at 889-90, 112 S.Ct. 2791. Further, the statute’s requirement that a minor must have already experienced abuse completely misses those cases in which revelation of a pregnancy might provoke an abusive situation that did not previously exist. See id. at 889, 112 S.Ct. 2791; Mandatory Parental Consent, supra. Even worse, this provision places full power and discretion over the minor’s constitutional rights in the hands of a third party, the physician, who would wield an effective veto over his patient’s abortion choice by his sole and unre-viewable determination that a declaration of abuse is not credible. This is exactly the kind of third-party veto that the Court has flatly rejected as a violation of a minor’s constitutional rights. See Danforth, 428 U.S. at 74, 96 S.Ct. 2831. I therefore believe that the statute’s abuse exception is constitutionally inadequate to protect mature minors who are in danger of physical abuse if they notify their parents about their wish to have an abortion.
Beyond physical abuse, some mature minors, like some of the adult women in Casey, will also be subject to serious psychological abuse or intimidation that would pose a substantial obstacle to their right to seek an abortion. In response to being forced to notify their parents about their intended abortion, some young women will be exposed to severe punishment short of actual battery. This punishment could include parents forcing the young women to leave the family home or denying them financial support. Data in the record show that eighteen percent of minors who declined to inform their parents did so because they feared being evicted from their homes. If anything, the potential consequences of such psychological abuse or intimidation are more severe for minor women, even mature minors, than for adult women because of their obvious dependence on their parents for support. This fact was recognized by the Supreme Court in Bellotti II: “[yjoung pregnant minors, especially those living at home, are particularly vulnerable to their parents’ efforts to obstruct both an abortion and their access to court.” 443 U.S. at 647, 99 S.Ct. 3035 (plurality opinion). Psychological abuse and intimidation pose substantial obstacles to a mature minor’s right to an abortion just as surely as does physical abuse. Again, the majority never considers that forcing young women to tell their parents that they wish to receive an abortion could have such harmful effects.
These consequences illustrate that parental notification without a mandatory bypass for mature minors permits parents to place much more significant (and harmful) obstacles than mere moral suasion in the path of young women’s constitutional right to an abortion. The empirical evidence advanced by the plaintiffs demonstrates that the danger of parental retaliation, like that of spousal abuse, would likely dissuade a large fraction of mature minors — forced against their will to notify them parents — from exercising their right to an abortion. A parental notice statute without a mandatory judicial bypass, like the spousal notification provision overturned in Casey, would allow parents to resort to physical and psychological coercion, thereby placing a substantial roadblock in the path of mature young women who seek an abortion. This type of statute, which denies a mature minor sure recourse to the courts, is “tantamount to the veto found unconstitutional in Danforth.” Casey, 505 U.S. at 897, 112 S.Ct. 2791 (discussing spousal notification statute). Since such a statute creates an undue burden on the constitutional rights of mature young women, it is unconstitutional. I would therefore join every oth *392 er circuit considering the issue and hold that parental notice statutes must contain a mandatory judicial bypass for mature minors.
III.
The majority suggests that if a mandatory bypass is a constitutional necessity for the mature minor, the Virginia statute “could reasonably be interpreted to require notice bypass for mature minors.” Ante at 382. The majority, however, does not hold that “may” has to be read as “must” in the bypass language of the Act. I would so hold.
The Virginia Supreme Court has in the past interpreted “may” to carry a mandatory rather than permissive meaning. In Harper v. Virginia Dept. of Taxation, 250 Va. 184, 462 S.E.2d 892 (1995), for instance, the Virginia Supreme Court interpreted the term “may” in a statute to be mandatory, even though the word “shall” appeared elsewhere within the same statute, because a mandatory meaning accorded with the clear intent of the legislature. See id. 462 S.E.2d at 895, 898; see also Whitlock v. Hawkins, 105 Va. 242, 53 S.E. 401, 408 (1906) (“[wjhere a statute can be construed in harmony with the fundamental law, the courts will adopt that construction, rather than one which will render the law void”); see generally 17 Michie’s Jurisprudence of Virginia & West Virginia, Statutes § 56 (“[I]f ... an act is susceptible of two constructions, one of which would make the same invalid as in violation of the ... federal constitution ] and the other give validity to the act, the latter interpretation will be adopted” (footnote omitted)). In this case Virginia concedes that if a parental notification statute must constitutionally provide a mandatory judicial bypass for mature minors, “‘may’ must be given a mandatory meaning.” Appellant’s Br. at 32.[4]
Construing the Virginia Parental Notice Act to read “may” as mandatory will require Virginia courts to authorize abortions for every minor found to be mature. There is no question that the Virginia parental notice statute thus construed would be constitutional. See Akron II, 497 U.S. at 510-13, 110 S.Ct. 2972 (holding statute which provided mandatory bypass for mature minors constitutional). Accordingly, I concur in the judgment that the Virginia Parental Notice Act is constitutional on its face because the term “may” must be interpreted to be mandatory.
IV.
A quarter century ago in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Supreme Court firmly established that women have the fundamental constitutional right to choose an abortion. Roe v. Wade has been under constant assault ever since. It has been inveighed against, campaigned against, legislated against, and litigated against. But it is still on the books, and one thing remains clear: a state law cannot place an undue burden on a woman’s right to have an abortion. I think it inescapable that forcing parental notification without mandatory bypass on mature women under eighteen would be an undue burden on this right. Thus, when all is said and done, I believe the Supreme Court will uphold the right of mature minors to choose an abortion without parental notification.
Judge MURNAGHAN, Judge ERVIN, and Judge DIANA GRIBBON MOTZ join in this opinion.

. A study reported in our record reveals that “in states without parental involvement laws in effect, the majority of unmarried minors having an abortion (61%) said that one or both of their parents knew about their abortion. Of the par-cnt who knew about the pregnancy, 75% had been told by the daughter herself.” In the majority of cases, therefore, notice occurs, and positive parental guidance can follow, without intervention by the state.

. The majority seems to have some doubt about whether the "undue burden" standard used by the Court in Casey is the proper standard for facial challenges to abortion regulations, a doubt our court first articulated in dicta in Manning v. Hunt, 119 F.3d 254, 268 n. 4 (4th Cir.1997). The focus of the controversy hinges on whether the Casey "undue burden” test overruled United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), which indicated that a facial challenge must “establish that no set of circumstances exists under which the Act would be valid.” Id. at 745, 107 S.Ct. 2095.
I harbor no such doubts. Casey is clear on its face that the Court "set forth a standard of general applicability” for reviewing facial challenges to abortion restrictions. Casey, 505 U.S. at 876, 112 S.Ct. 2791; see also Fargo Women's Health Org. v. Schafer, 507 U.S. 1013, 1014, 113 S.Ct. 1668, 123 L.Ed.2d 285 (1993) (O'Connor, S., concurring in denial of application for stay and injunction pending appeal) ("In striking down Pennsylvania’s spousal-notice provision [in Casey ], we did not require petitioners to show that the provision would be invalid in all circumstances. Rather, we made clear that a law restricting abortions constitutes an undue burden, and hence is invalid, if, ‘in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman’s choice to undergo an abortion.’ ” (emphasis and second alteration in original) (citation omitted)); cf. Janklow v. Planned Parenthood, 517 U.S. 1174, 1175, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996) (Stevens, J., respecting the denial of certiorari) (“Salerno's rigid and unwise dictum has been properly ignored in subsequent cases even outside the abortion context.”); Michael C. Dorf, Facial Challenges to State and Federal Statutes, 46 Stan. L.Rev. 235, 271-79 (1994) (noting that even before Casey, Supreme Court did not apply Salerno standard in the abortion context). I would therefore join the overwhelming majority of our sister circuits in accepting that the Casey undue burden test must be applied in facial challenges to abortion restrictions. See, e.g., Women’s Medical Professional Corp. v. Voinovich, 130 F.3d 187 (6th Cir.1997), cert. denied, - U.S. -, 118 S.Ct. 1347, 140 L.Ed.2d 496 (1998); Jane L. v. Bangerter, 102 F.3d 1112 (10th Cir.1996), cert. denied, - U.S.-, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997); Planned Parenthood v. Miller, 63 F.3d 1452 (8th Cir.1995) (Arnold, C.J.), cert. denied sub nom. Janklow v. Planned Parenthood, 517 U.S. 1174, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996); Casey v. Planned Parenthood, 14 F.3d 848 (3d Cir.1994), (on remand), stay denied sub nom. Planned Parenthood v. Casey, 510 U.S. 1309, 114 S.Ct. 909, 127 L.Ed.2d 352 (Souter, Circuit Justice 1994); Wicklund v. Lambert, 979 F.Supp. 1285 (D.Mont.1997) (on remand) (citing Compassion in Dying v. Washington, 79 F.3d 790, 798 n. 9 (9th Cir.1996) (en banc), rev’d on other grounds sub nom. Washington v. Glucksberg, - U.S.-, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)).
I must also note that even the Fifth Circuit, the sole court to reject Casey and follow Salerno, has determined that a parental notice statute must include a mandatory judicial bypass for mature minors in order to survive a facial constitutional challenge. See Causeway Medical Suite v. Ieyoub, 109 F.3d 1096, 1104 (5th Cir.1997), reh'g en banc denied 123 F.3d 849 (5th Cir.), cert. denied, — U.S.-, 118 S.Ct. 357, 139 L.Ed.2d 278 (1997).
At any rate, the majority claims that even under the Casey test, the Virginia statute is facially valid. Accordingly, I proceed by challenging this conclusion under Casey.

. The case of Spring Adams, a young woman of 13 from Idaho, illustrates that this possibility is all too real. Adams became pregnant after being repeatedly raped by her father. When he found out that she was about to get an abortion, he shot and killed her. See Margie Boule, An American Tragedy, Portland Oregonian, Aug. 27, 1989.

. I am also persuaded by Judge Widener's statement that under Virginia law, any court that denied permission for an abortion to a mature minor would commit reversible error. See ante at 385 (Widener, J., concurring).